[Cite as *State v. Nettles*, 2026-Ohio-1893.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                              Court of Appeals No. L-25-00236

      Appellee

                                     Trial Court No. CR0201603179-000-D1

v.

Travis Nettles                                            **DECISION AND JUDGMENT**

      Appellant                                     Decided: May 22, 2026

* * * * *

Julia R. Bates, Prosecuting Attorney and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Travis Nettles, Pro Se Appellant

* * * * *

**SULEK, J.**

{¶ 1} Defendant-appellant, Travis Nettles, pro se, appeals a judgment of the Lucas County Court of Common Pleas denying his Crim.R. 32.1 post-conviction motion to withdraw his guilty plea. Because the trial court lacked jurisdiction to consider the motion, the judgment is affirmed.

## I. History

{¶ 2} In November 2016, the Lucas County Grand Jury indicted Nettles on counts of murder, felonious assault, having weapons while under disability, and tampering with evidence. The charges stemmed from the shooting death of B.W. in Toledo, Lucas County, Ohio. After the court denied Nettles' motion to suppress statements made to both Maumee and Toledo Police, he pleaded guilty to murder, with the State dismissing the remaining counts. The court then sentenced Nettles to a mandatory 15-year to life sentence with a consecutive three-year firearm specification. The court imposed an additional 982-day consecutive sentence because Nettles was on postrelease control at the time of the murder.

{¶ 3} Nettles raised three assignments of error on direct appeal. He argued that the court erred in denying his motion to suppress, by accepting his involuntary guilty plea, and by imposing the costs of prosecution without first considering his present or future ability to pay. Nettles claimed his plea was involuntary because the court denied his request to continue the trial date and retain private counsel. On November 9, 2018, this court affirmed in part, vacating the imposition of the costs of confinement and appointed counsel. *State v. Nettles*, 2018-Ohio-4540 (6th Dist.).

{¶ 4} On August 22, 2025, Nettles filed a Crim.R. 32.1 motion to withdraw his guilty plea, claiming that in 2023, after a public records request for the court records in this case, he discovered that the trial court failed, contrary to its expressed intention, to file into the record two letters he authored explaining his dissatisfaction with counsel. Nettles claimed that without the letters in the record in his direct appeal, his attorney

2.

could not fully argue the extent of the breakdown of the attorney-client relationship and that the court's decision to add co-counsel, instead of replacing counsel, was insufficient.

{¶ 5} Denying the motion as being barred by res judicata, the court concluded that "[a]ll of the facts underlying this claim were within Nettles' personal knowledge prior to his direct appeal. Thus, he could have raised this issue on direct appeal, but did not do so."

{¶ 6} This appeal followed.

## II. Assignments of Error

{¶ 7} Nettles raises two assignments of error for review:

Assignment of Error I: The trial court erred denying Appellant's post-sentence motion to withdraw guilty plea.

Assignment of Error II: The trial court erred by stating and applying an incorrect argument allegedly raised by Appellant.

## III. Analysis

{¶ 8} In Nettles' first assignment of error he contends that the court erred in its strict application of res judicata to bar his motion filed after he learned through a public records request that the letters were not part of the record. In his second assignment of error Nettles claims that the court incorrectly construed his argument as being that the court failed to address his concerns regarding the breakdown of the attorney-client relationship, rather than his actual argument that the court ineffectively addressed the situation by appointing co-counsel, rather than appointing new counsel. Nettles'

3.

assignments of error relatedly concern the trial court's denial of his post-sentence motion to withdraw his guilty plea and will be addressed jointly.

{¶ 9} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." An appellate court reviews a trial court's denial of a motion to withdraw a plea for an abuse of discretion. *State v. Cooke*, 2023-Ohio-4679, ¶ 14 (6th Dist.), citing *State v. Davis*, 2020-Ohio-4539, ¶ 20 (6th Dist.).

{¶ 10} In *State v. Matthews*, 2025-Ohio-3175 (6th Dist.), this court employed the following analytical framework when reviewing a postsentence motion to withdraw a guilty plea:

> "In step one, the question is whether the defendant's conviction was appealed and affirmed on appeal?" *State v. Vasquez*, 2024-Ohio-2947, ¶ 14 (6th Dist.), quoting *State v. Davis*, 2020-Ohio-4539, ¶ 34 (Zmuda, P.J., concurring). "If the answer is yes, then the trial court has no jurisdiction to entertain the post-sentence motion to withdraw." *Id.* If the answer is no, the court must proceed to step two. "In step two, the question is whether the defendant relies upon evidence contained within the trial court record to support his post-sentence motions to withdraw?" *Id.* "If the answer is yes, then the defendant's motion is barred by res judicata." *Id.* If the defendant relies on facts outside of the record to support his motion, "the trial court must address the motion on its merits and ascertain whether the defendant should be allowed to withdraw his plea post-sentence in order to correct manifest injustice as provided in Crim.R. 32.1." *Id.*

*Id.* at ¶ 14.

{¶ 11} Recently this court decided a case concerning step one of the framework. In *State v. O'Brien*, 2026-Ohio-1173 (6th Dist.), we examined the Ohio Supreme Court's holding in *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio
4.

St.2d 94 (1978), and the Court's subsequent holdings in *State v. Ketterer*, 2010-Ohio-3831, *State v. Davis*, 2011-Ohio-5028, and *State ex rel. Davis v. Janas*, 2020-Ohio-1462.

{¶ 12} In *Special Prosecutors*, the defendant pleaded guilty to murder. The appellate court affirmed his conviction finding that the plea was knowing, intelligent and voluntary. *State v. Asher*, 1976 WL 188541 (7th Dist. Mar. 3, 1976). Months later, Asher filed a Crim.R. 32.1 motion to withdraw his guilty plea in the trial court. The court granted the motion and set the matter for trial. The prosecutors appointed for trial filed a complaint for a writ of prohibition alleging that the court lacked jurisdiction to allow Asher to withdraw his guilty plea. The appellate court denied the writ of prohibition and the prosecutors appealed to the Ohio Supreme Court. *Special Prosecutors* at 95.

{¶ 13} Reversing the denial of the writ, the Court noted that following an appeal, a trial court retains jurisdiction over issues not inconsistent with that of the appellate court and that Crim.R. 32.1 does not confer upon the trial court the power to vacate a judgment that has been affirmed by the appellate court. *Id.* at 97.

{¶ 14} In *Ketterer*, following the Supreme Court of Ohio's affirmance of Ketterer's conviction after a guilty plea and its remand for resentencing, Ketterer moved to withdraw his guilty plea which the trial court denied. Back on appeal to the Ohio Supreme Court, the Court concluded that because it had previously considered whether the plea was knowing and voluntary, res judicata was a "valid basis" for rejecting the motion. *Id.* at ¶ 60. The court further concluded that "[u]nder the authority of *Special Prosecutors*, the panel had no authority to consider Ketterer's motion to withdraw his guilty pleas, let alone grant him a new trial." *Id.* at ¶ 62.

5.

{¶ 15} *Davis* involved a post-affirmance motion for a new trial based on a newly discovered evidence claim. *Davis* at ¶ 8. On appeal of the trial court's denial of the motion, the court concluded that based on *Special Prosecutors*, the trial court lacked jurisdiction to act on the new trial motion. *Id.* The Ohio Supreme Court reversed noting that

> *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure. These motions provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences. The trial court acts as the gatekeeper for these motions and, using its discretion, can limit the litigation to viable claims only.

*Id.* at ¶ 37. The Court then concluded that the trial court retains jurisdiction to decide a new trial motion based upon newly discovered evidence. *Id.*

{¶ 16} Finally, *Janas* reversed the dismissal of a mandamus petition filed years after Ian Davis' conviction was affirmed on appeal. Davis claimed that he learned from the adult parole authority that the court improperly changed his sentence by issuing a nunc pro tunc judgment entry altering the sentencing language from "20 year to life" to "20 full years to life." The Court noted that although a trial court's jurisdiction over a criminal matter is limited once the proceedings are complete, it retains jurisdiction over posttrial motions permitted inter the Ohio Rules of Criminal Procedure. *Id.* at ¶ 11, quoting *Davis* at ¶ 37. In a footnote, the Court listed multiple posttrial motions including a motion to withdraw a guilty plea under Crim.R. 32.1. *Id.* at ¶ 11, fn. 3.

{¶ 17} *O'Brien* explained that the Ohio Supreme Court's decisions following *Special Prosecutors* did not undermine its general rule that "a trial court loses jurisdiction

6.

to take action in a case once an appeal has been taken and decided, unless the action pertains to an issue that is not inconsistent with the jurisdiction of the appellate court to review, affirm, modify, or reverse the appealed judgment." *Id.* at ¶ 36. After determining that *Special Prosecutors* had not been overruled, we concluded that its clear holding that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court" combined with the "the very nature of a guilty plea itself," i.e., the complete admission of guilt, precluded the trial court's consideration of O'Brien's motion to withdraw his plea.[1]

{¶ 18} As in *O'Brien*, because we affirmed Nettles' conviction following his guilty plea the trial court lacked jurisdiction to consider his post-affirmance Crim.R. 32.1 motion to withdraw his guilty plea. Although the trial court correctly denied Nettles' motion, it did so for different reasons. "'[T]his court will not reverse a trial court decision that 'achieves the right result for the wrong reason, because such an error is not prejudicial.'"" *Id.* at ¶ 45. Accordingly, Nettles' first and second assignments of error are not well-taken.

---

[1] *O'Brien* acknowledged that its holding conflicted with decisions from the Eighth and Tenth Appellate Districts and we certified the matter on the following question: "Whether the rule in *Special Prosecutors* continues to apply such that a trial court is without jurisdiction to consider a Crim.R. 32.1 post-sentence motion to withdraw a guilty plea that is filed after the conviction has been affirmed on appeal?" *Id.* at ¶ 47.

7.

## IV. Conclusion

{¶ 19} Upon due consideration, the judgment of the Lucas County Court of Common Pleas is affirmed. Nettles is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, P.J.
_____
JUDGE


Charles E. Sulek, J.
CONCUR
_____
JUDGE


Christine E. Mayle, J.
CONCUR AND WRITES
SEPARATELY.
_____
JUDGE


**MAYLE, J., concurring.**

{¶ 20} While I agree with the end result in this case, for the reasons stated in my concurrence in *State v. O'Brien*, 2026-Ohio-1173 (6th Dist.) (Mayle, J. concurring), I would have found that in light of the Supreme Court of Ohio's decisions in *State v. Davis*, 2011-Ohio-5028, *State v. Straley*, 2019-Ohio-5206, and *State ex rel. Davis v. Janas*, 2020-Ohio-1462, the trial court had jurisdiction to consider Nettles' Crim.R. 32.1 motion to withdraw his guilty plea.

8.

{¶ 21} In *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94 (1978), the Ohio Supreme Court ruled that "Crim.R. 32.1 does not vest jurisdiction in the trial court to maintain and determine a motion to withdraw the guilty plea subsequent to an appeal and an affirmance by the appellate court." *Id.* at 97. It reasoned that the trial court lacked jurisdiction because "[t]he judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment." *Id.* The Supreme Court emphasized that Crim.R. 32.1 therefore "does not confer upon the trial court the power to vacate a judgment which has been affirmed by the appellate court," which results in "a total and complete want of jurisdiction by the trial court" to review the motion. *Id.* at 98.

{¶ 22} In the years that have followed, the Supreme Court has issued a series of decisions that have raised doubt about the continued application of *Special Prosecutors*. Notably,

> In 2011, the Supreme Court clarified that "the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure" and recognized that "[t]hese motions provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences." *Davis*, 2011-Ohio-5028, at ¶ 37. The court reaffirmed this principle almost a decade later in *Janas*, emphasizing that "[r]elief from final judgments in criminal cases is confined to the procedures authorized by statute or rule." *Janas*, 2020-Ohio-1462, at ¶ 11. The court held that "[o]utside of *those procedures*" there is no mechanism by which a trial court can "substantively change a defendant's sentence *after that sentence has been affirmed on direct appeal*." (Emphasis added). *Id.* Significantly, the court specifically identified motions to withdraw guilty pleas under Crim.R. 32.1 as one such "procedure" under Ohio law. *Id.* at fn. 3.

*O'Brien*, 2026-Ohio-1173 at ¶ 52 (6th Dist.) (Mayle, J., concurring).

9.

{¶ 23} In this court's recent decision in *O'Brien*, the majority found that these decisions did not overrule *Special Prosecutors*. *Id*. at ¶ 43. Therefore, this court concluded that because we had affirmed O'Brien's conviction on appeal, the trial court lacked jurisdiction to consider his post-affirmance Crim.R. 32.1 motion to withdraw his guilty plea. *Id*. at ¶ 44-45. I concurred in the result—agreeing with the majority that denial of O'Brien's motion was the correct outcome. However, I disagreed with the majority's conclusion about *Special Prosecutors* and would have concluded that the trial court had jurisdiction to consider O'Brien's Crim.R. 32.1 motion.

{¶ 24} Turning to the current case, the majority relies on *O'Brien* and makes the same conclusion that under *Special Prosecutors*, the trial court lacked jurisdiction to consider Nettles' Crim.R. 32.1 motion.

{¶ 25} I maintain my position that the pronouncements in *Davis* and *Janas* are in direct conflict with *Special Prosecutors* and when read together, along with the Supreme Court's decision in *Straley*, make clear that a trial court retains jurisdiction to consider a post-affirmance Crim.R. 32.1 motion to withdraw a guilty plea. For these reasons, I would find that the trial court had jurisdiction to review Nettles' motion to withdraw his guilty plea.

{¶ 26} Turning briefly to the motion, Nettles claimed in his Crim.R. 32.1 motion that after a 2023 public records request for the court records in his case, he discovered that the trial court failed to file into the record two letters that he had authored explaining his dissatisfaction with counsel. He believed that without the letters in the record for his direct appeal, his attorney could not fully argue the extent of the breakdown of the

10.

attorney-client relationship and that the court's decision to add co-counsel, instead of replacing counsel, jeopardized his right to effective assistance of counsel and made his plea not voluntarily made.

{¶ 27} The trial court found that Nettles' claims were barred by res judicata noting that "[a]ll of the facts underlying this claim were within Nettles' personal knowledge prior to his direct appeal. Thus, he could have raised this issue on direct appeal, but did not do so."

{¶ 28} It is well-established that claims of ineffective assistance of counsel that appear on the face of the record cannot be raised through a Crim.R. 32.1 motion to withdraw guilty pleas because they could have been brought on direct appeal. *See e.g., State v. Cain*, 2021-Ohio-1841 (6th Dist.); *State v. Thomson*, 2019-Ohio-3021 (6th Dist.); *State v. Johnson*, 2012-Ohio-1400 (6th Dist.); *State v. Thomson*, 2006-Ohio-1224 (6th Dist.); and *State v. Reznickcheck*, 2004-Ohio-4801 (6th Dist.). Such is the case here. While Nettles believes that the trial court's failure to file the letters prevented his counsel from raising the argument that the court had jeopardized his right to effective counsel on appeal, he admits that the breakdown of this relationship was in the record and addressed by the trial court during his initial proceedings in this case. It is clear that Nettles could have raised these issues in his direct appeal concerning the breakdown of his relationship with his attorney and/or the way the trial court handled the situation, he simply did not. "[R]es judicata bars a defendant from raising claims in a Crim.R. 32.1 postsentencing motion to withdraw a guilty plea that he raised *or could have raised* on direct appeal." *Straley*, 2019-Ohio-5206, at ¶ 15 (emphasis added.).

11.

{¶ 29} Because Nettles could have raised this issue on direct appeal, his claims are barred by res judicata.  For this reason, I would affirm the trial court's decision on the merits.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

12.